1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| SAMUEL LOVE,<br><br>               Plaintiff<br><br>      v.<br><br>MARK G. STAINBROOK, et al.,<br><br>               Defendants. | Case No. 2:22-cv-02878-FLA (GJS)<br><br><br>**ORDER TO SHOW CAUSE RE:**<br>**POSSIBLE DISMISSAL** |

      On April 29, 2022, Plaintiff filed a complaint entitled "Rape and Physical Injury Lawsuit for Injunctive and Equittable [*sic*] Relief, Monetary Damages, and Punitive Damages." [Dkt. 1, "Complaint".]  The Complaint sues 23 Defendants: Mark G. Stainbrook; Huma Ahmed; Karen S. Lynch; "The Four Policy Officers From The Beverly Hills Police Station"; CVS Manager ""Venus""; Eric Garcetti, Mayor of Los Angeles; Gavin Newsom, Governor of California; Rob Bonta, Attorney General for California; Rochelle Walensky, Director of the Centers for Disease Control and Prevention; Dave North; Matthew Walton; John E. Chaquica; Carla Smith; the Beverly Hills Police Station; the City of Beverly Hills; the City of Los Angeles; the State Of California; CVS Health; Garfield Beach CVS LLC; the Centers for Disease Control And Prevention ("CDC"); the Superior Court of California (County of Los Angeles); "Sedgwick"; and George Hills Company, Inc.

1

**The Complaint's Allegations**

2      The overarching theory of the Complaint is that all 23 Defendants "are guilty

3  of forming a conspiracy to rape and physically injure Plaintiff and then refused to

4  pay monetary damage compensation to Plaintiff."  [Complaint at 2.]  Somewhat

5  more specifically – although the Complaint is far from specific factually – Plaintiff

6  alleges that the asserted rape and injuries took place on "October 16, 2022" – a date

7  that has not yet occurred.  [Complaint at 2.][1]  Plaintiff alleges that he was at an

8  unspecified CVS pharmacy location and Defendant CVS Manager Venus denied

9  him service, because he was not in compliance with the store's mask policy, which

10  Plaintiff contends is a "fake mandate that lawfully does not apply to" him.  A CVS

11  employee called the Beverly Hills Police Station "with "false accusations."  Plaintiff

12  left the CVS intending to go home.  [*Id.* at 2-3.]

13      Plaintiff alleges that while he was heading home, he decided to go inside Ace

14  Medical Pharmacy, but once inside, he was attacked by two Beverly Hills "Policy

15  Officers" – Agent Rose, a male, and a short Black female, name unknown.  Agent

16  Rose grabbed Plaintiff's right arm and forced him outside the pharmacy.  Once all

17  three were outside, the two "Policy Officers" "assaulted, harassed, injured and raped

18  Plaintiff."  [Complaint at 3.]  Plaintiff alleges that they "sexually fondled [his]

19  genitalia, groin area, inner thighs, and buttocks."  The female officer put her hands

20  in his front trouser pocket and removed his wallet and private property and then hit

21  Plaintiff's hands "really hard," which caused his cellphone to drop to the floor,

22  thereby ending his effort to record the incident.  [*Id.*]  Plaintiff alleges that both

23  officers handcuffed him tightly, which caused wrist pain, that his knees were injured

24  when the officers pushed him against a cement wall, and that his "back, neck and

25

---

26  [1]      Later in the Complaint, Plaintiff refers to events that occurred in the early part of 2022,
when he made one or more claims regarding the incident at issue, and to seeking medical
27  treatment on October 17, 2021, due to injuries he suffered.  Thus, the Court assumes that the
reference to October 16, 2022 is a typographical error and that the event occurred on October 16,
28  2021.

2

1   brain were also negatively affected" (hereafter, the "October 16 Incident").  [*Id.* at

2   5.]  Plaintiff contends that the October 16 Incident caused him to be "trafficked."

3   [*Id.* at 4, 6, 10.]

4          With respect to the Defendants outside of the above-noted two "Policy

5   Officers," the Complaint is bereft of many factual allegations or inkling about why

6   they are named as Defendants.  Plaintiff references a "Policy Officer Downs," who

7   perhaps is among the Defendants named as "The Four Policy Officers From The

8   Beverly Hills Police Station," although this is uncertain.  Plaintiff alleges that

9   Downs "intimidated, extorted, degraded and publicly shamed Plaintiff to get private

10  information and forced Plaintiff to agree to a simulation of legal process and illegal

11  Ponzi scheme" by stating that Plaintiff would be taken to jail unless he signed a

12  Notice to Appear and provided his fingerprints.  [Complaint at 6.]  Plaintiff contends

13  that this officer could not issue a Notice to Appear without a subpoena and that

14  Plaintiff "does not qualify for the offer to appear in court, and so the offer was

15  declined and permanently dismissed."  [*Id.* at 6-7.]

16         With respect to Defendants City of Los Angeles, City of Beverly Hill,

17  Beverly Hills Police Department, and the Four Policy Officers, Plaintiff alleges that

18  they stole, shared, and sold his personal data to third parties, including law firms,

19  although he does not allege any facts about how this occurred.  [Complaint at 8-9.]

20         With respect to Defendants CDC and its Director (Rochelle Walensky), the

21  sole reason stated for why they are named as Defendants is that Plaintiff believes the

22  CDC has published unidentified "deceptive communications" with "ill motives and

23  intent," including regarding mask mandates that Plaintiff contends do not apply to

24  him.  He asserts that these unidentified "deceptive communications" are the cause of

25  above-described October 16 Incident rape and battery.  [Complaint at 8.]

26         The Complaint also includes a section entitled "Failed Attempts to Settle

27  Claim Privately," which read in full and liberally indicates that Plaintiff made

28  claims to various entities/persons based on the October 16 Incident, including

possibly to CVS, the City of Beverly Hills, the Beverly Hills Policy Department, the City of Los Angeles, the State of California, and the CDC.  Plaintiff alleges that Defendants Mark G. Stainbrook and the Beverly Hills Police Department, Huma Ahmed and the City of Beverly Hills, Karen S. Lynch and CVS,[2] CDC and Rochelle Walensky, Eric Garcetti and City of Los Angeles, Gavin Newsom and the State of California, and Defendant Los Angeles County Superior Court failed to respond to his claims.  [Complaint at 10-13.]  Plaintiff alleges that although he has "ordered" Defendants Rob Bonta and the State of California to "enforce" his claim and "enforce the Judgments against Defendants," they have failed to do so, and instead, they sent him a letter stating that the Attorney General's office only reviews matters involving credible allegations of criminal conduct, even though Plaintiff's letter "clearly indicated criminal conduct was involved."  [*Id.* at 12.]  Plaintiff alleges that Defendant George Hills Company, acting on behalf of Defendant City of Beverly Hills, acted unlawfully in rejecting Plaintiff's claim given that it lacked "first-hand knowledge of the rape and physical injury."  [*Id.* at 11.]  Plaintiff alleges that he received a January 4, 2022 letter from Defendant Matthew Walton, a claims examiner at Defendant Sedgwick (which acts on behalf of Defendant CVS), that Plaintiff left voicemails for Walton in February 2022, that Walton and Plaintiff spoke on March 9, 2022, and despite Walton's promise to expedite matters and promptly call Plaintiff again, Plaintiff has not heard from Walton, Sedgwick, or Defendant Dave North (alleged to be Sedgwick's CEO).  [*Id.* at 11-12.]

The Complaint alleges six Causes of Action.  The First Cause of Action is one for "Rape."  The claim alleges that the two above-noted Defendant Beverly Hills "Policy Officers" sexually fondled and raped Plaintiff, which he asserts violated the 2003 federal law commonly known as PREA (the Prison Rape Elimination Act).

---

[2]    The Complaint fails to identify who these individual Defendants are, but a Google search indicates that Stainbrook is the Chief of the Beverly Hills Police Department, Ahmed is the City Clerk for the City of Beverly Hills, and Lynch is the President and CEO of CVS.

1   [Complaint at 4-5.]

2        The Second Cause of Action is labelled "Physical Injury."  As described

3   above, Plaintiff alleges that the two "Policy Officers" injured him during the

4   October 16, 2021 incident, including causing an ongoing left knee injury.

5   [Complaint at 5.]

6        The Third Cause of Action is labelled "Criminal Conduct."  Plaintiff alleges

7   that all 23 Defendants "knowingly and willingly acted outside their jurisdiction and

8   official powers and duties by misapplying policies, code, and activity regulations to

9   engage in criminal conduct to attack and severely injure Plaintiff, extort his Life

10  force and payment in a state-wide money laundering and Federal Funding Ponzi

11  scheme, then refuse monetary compensation to Plaintiff for all damages caused."

12  [Complaint at 6.]  Plaintiff alleges that Defendants City of Beverly Hills and their

13  four "Policy Officers," CVS and its individual named Defendants, the City of

14  Beverly Hills, and the CDC are guilty of the state law crime of "aggravated battery."

15  Plaintiff also mentions the above-described actions of Officer Downs, which

16  Plaintiff contends renders Defendants Beverly Hills Police Department, City of

17  Beverly Hills, and Los Angeles County Superior Court guilty of the state law crimes

18  of fraud and unspecified "criminal conduct."  Plaintiff asserts that:  the local and

19  state official Defendants have taken oaths to support the United States Constitution

20  and California's Constitution and law; therefore, Defendants Four Policy Officers,

21  the State of California, the City of Los Angeles, the City of Beverly Hills, the

22  Beverly Hills Police Department, the CDC, CVS, and all individual local and state

23  Defendants are guilty of "treason" under 18 U.S.C. § 2381; and all other Defendants

24  are guilty of having given them "aid and comfort" to "conduct the treasonous acts."

25  Plaintiff asserts that all 23 Defendants are guilty of "rebellion and insurrection"

26  under 18 U.S.C. § 2383, and "meet the criteria for enemy combatants."  Plaintiff

27  asserts that the two "Policy  Officers" who raped and assaulted him, the Beverly

28  Hills Police Department, the City of Beverly Hills, the City of Los Angeles, the

State of California, the CDC, and CVS "are guilty of Class A felonies, pursuant to 18 U.S. Code § 3559(a)(1)."  Plaintiff asserts that all Defendants have committed the state law crimes of larceny and fraud.  Plaintiff asserts that Defendants Sedgwick, Matthew Walton, and Dave North have violated the California Insurance Code by failing to settle his claim.  Finally, as noted above, Plaintiff contends that the CDC – through its communications regarding mask mandates and otherwise – caused the October 16 Incident rape and battery of Plaintiff.  [Complaint at 6-8.]

The Fourth Cause of Action is labelled "Aggravated Identity Theft."  As noted earlier, Plaintiff contends that Defendants City of Los Angeles, City of Beverly Hill, Beverly Hills Police Department, and the Four Policy Officers stole, shared, and sold his personal data to third parties, and have monetized his intellectual property and data through unidentified means.  He asserts that these Defendants, therefore, have violated California's data protection and computer privacy laws.  Plaintiff also asserts that Defendants Beverly Hills Police Department and City of Beverly Hills conspired with Defendant CVS "to make a merchandise of Plaintiff and sold Plaintiff, which is a form of human trafficking," and that under Deuteronomy 42:7, they should be put to death.  Plaintiff further asserts that Defendants Mark G. Stainbrook, Huma Ahmed, Eric Garcetti, Gavin Newsom, Rob Bonta, the Beverly Hills Police Department, the City of Beverly Hills, the City of Los Angeles and the State of California are in violation of 18 U.S. Code § 1028A(a)(2) through some unspecified means. [Complaint at 8-9.]

The Fifth Cause of Action is labelled "Terrorism."  Plaintiff alleges that Defendants State of California, City of Los Angeles, City of Beverly Hills, Beverly Hills Police Department, the CDC, CVS and all employees and agents, the four "Policy Officers," and "all other representatives of such corporations, including those that attacked Plaintiff, are involved in violent crime and are domestic terrorist organizations."  Plaintiff alleges that all 23 Defendants "failed to defend the interests of the United States according to the law; they are a threat to public safety;

6

are engaged in criminal acts; and are guilty of unlawful behavior" and "are guilty of being directly and/or indirectly engaged in domestic terrorism and failed to protect the security of the United States because of the acts committed against Plaintiff." Plaintiff alleges that all Defendants are in violation of, and guilty of international and domestic terrorism, under 18 U.S.C. §§ 2332b(a)(1)(A) and 2331(1) and (5), and must be punished under 18 U.S.C. § 2332b(c)(1)(B)-(E).   [Complaint at 9-10.]

The final, Sixth Cause of Action is labelled "Human Trafficking."  Plaintiff alleges that Defendants "Beverly Hills Police Department, the City of Beverly Hills, the City of Los Angeles, the State of California, CVS, the CDC, Sedgwick, and George Hills Company, Inc. are organized, sophisticated criminal enterprises directing and leading criminal activities, deceptive communicate [sic] and coercion to ensnare Plaintiff in a permanent condition of involuntary servitude within an evil system of control and human trafficking."  Plaintiff alleges that "[t]hese corporations are controlling the narrative to control and traffic Plaintiff and The American People."  He alleges that the October 16 Incident constitutes "human trafficking violations" and that the Defendants "are in severe violation of the Trafficking Victims Protection Act, 22 U.S.C. 7101 and Executive Order 13903." [Complaint at 10.]

As monetary relief sought, Plaintiff states that the Defendants are "fined" as follows:  $17,000,000 from the Beverly Hills Police Department and the City of Beverly Hills; $17,000,000 from CVS Health and Garfield Beach CVS, LLC; $17,000,000 from the CDC; $4,500,000 from Mark G. Stainbrook; $4,500,000 from Huma Ahmed; $4,5000,000 from Karen S. Lynch; $760,550 from CVS Manager "Venus"; $760,550 each from the two "Policy Officers" who raped and injured him; $240,550 from the other two "Policy Officers"; $4,500,500 from Rochelle Walensky; $9,322,000 from Eric Garcetti; $9,322,000 from Gavin Newsom; $9,322,000 from Rob Bonta; $250,000,000 from, the State of California; $75,000,000 from the City of Los Angeles; $7,252,223 from the Los Angeles

County Superior Court; $2,525,000 each from Dave North, Matthew Walton, and Sedgwick; and $1,722,300 each from John E. Chaquica, Carla Smith, and George Hills Company.  Plaintiff also seeks punitive damages.  [Complaint at 13-15.]

As further relief, Plaintiff seeks to have the property, assets, and bank accounts of all Defendants "guilty of Serious Human Rights Abuse and Corruption" immediately blocked.  He also seeks to have all Defendants "executed by death penalty" "[b]ecause The Nuremberg Trials are back."  Finally, Plaintiff seeks to have Defendants prohibited from stopping, arresting, detaining, questioning, searching, or seizing Plaintiff or his property, and further, to be prohibited from ever speaking to Plaintiff again except to resolve this lawsuit for any other lawful matter. [Complaint at 15.]

### Dismissal Appears To Be Required

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L.Ed.2d 603 (1990), and a federal court may not entertain an action over which it has no jurisdiction.  *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S. Ct. 2099, 72 L.Ed.2d 492 (1982); *see also Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1443 (9th Cir. 1997)."  *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000).  A federal court may dismiss an action sua sponte for lack of jurisdiction.  *Franklin v. State of Or., State Welfare Division*, 662 F.2d 1337, 1342 (9th Cir. 1981).  "In contrast to dismissals for failure to state a claim, if the court lacks subject matter jurisdiction, it is not required to issue a summons or follow the other procedural requirements."  *Id.* Thus, at the outset of this case, this Court must resolve the critical question of whether it has jurisdiction over the subject matter of the Complaint.

In addition, "Rule 12(b)(6) [of the Federal Rules of Civil Procedure] authorizes a court to dismiss a claim on the basis of a dispositive issue of law."

*Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' . . ., a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* (citation omitted).  Under Rule 12(b)(6), a court may dismiss a claim *sua sponte* for failure to state a claim when the plaintiff "cannot possibly win relief."  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (reaffirming this rule); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (a district court may, on its own initiative, dismiss a complaint for failure to state a claim).  A court may do so even when the defendant has not appeared and sought dismissal. *Id.; Ricotta v. State of California*, 4 F. Supp. 2d 961, 968 (S.D. Cal. 1998), aff'd 173 F.3d 861 (9th Cir. 1999).  Before *sua sponte* dismissing a claim under Rule 12(b)(6), a court must give notice of its intention to do so and provide the plaintiff with an opportunity to oppose such a dismissal in writing.  *Seismic Reservoir*, 785 F.3d at 335.  This is not required, however, when amendment would be futile,  *Omar*, 813 F.2d at 991 (a *sua sponte* "dismissal may be made without notice where the claimant cannot possibly win relief").

"Pro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see also Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995) (*per curiam*) (failure of pro se litigant to follow procedural rules justified dismissal of civil rights action).  This includes filing a complaint that complies with the Federal Rules of Civil Procedure's pleading requirements and, critically, states a basis for federal jurisdiction.

Plaintiff did not file a Civil Cover Sheet (Form CV-71) setting forth the basis for this Court's jurisdiction over this action, as is required.  *See* Local Rule 3-1.  The instant Complaint also does not expressly state what federal jurisdictional basis Plaintiff contends applies here.  Diversity jurisdiction under 28 U.S.C. § 1332 is

inapplicable on the face of the Complaint, given that Plaintiff does not allege that all parties are diverse and that many of the individual Defendants are alleged to be employed in Los Angeles County and/or are State of California officials and, thus, would not seem to be diverse to Plaintiff, who lists a Beverly Hills address.  The question, then is whether federal question jurisdiction under 28 U.S.C. § 1331 exists based on the allegations of the instant Complaint.  *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) ("[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint") (citation omitted).  Plaintiff does not actually invoke federal question jurisdiction, but the Court has carefully examined the Complaint to see if it exists based on Plaintiff's allegations, including his assertions that Defendants have violated numerous federal statutes.

The First Cause of Action seeks relief on the basis that the conduct of the two "Policy Officers" during the October 16 Incident violated PREA, the Prison Rape Elimination Act (34 U.S.C. § 30301 *et seq.*).  Plaintiff, however, was not a person covered by PREA when that conduct or its aftermath occurred based on the Complaint's allegations, because he was not an "inmate."  *See* 34 U.S.C.A. § 30309 (defining "inmate" for PREA purposes to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program").  Moreover, and dispositively, PREA does not provide for a damages remedy and does not give rise to a basis for a civil claim.  *See, e.g., Hernandez v. Coffee Creek Corr.*, No. 3:18-CV-01763-MK, 2020 WL 6905321, at *2 (D. Or. Nov. 24, 2020) ("[t]here is no private cause of action under PREA"); *United States v. Abrams*, No. 3:14-CR-0069-RCJ-WGC, 2015 WL 8041859, at *2 n.1 (D. Nev. Dec. 4, 2015) ("PREA does not create a private cause of action"); *Hatcher v. Harrington*, No. 14-00554 JMS/KSL, 2015

1   WL 474313, at *5 (D. Haw. Feb. 5, 2015) (collecting numerous cases so holding);

2   *L. v. Whitson*, No. 2:08-CV-0291-SPK, 2009 WL 5029564, at *4 (E.D. Cal. Dec. 15,

3   2009) ("[PREA] in itself contains no private right of action, nor does it create a right

4   enforceable under Section 1983. Plaintiff thus fails to state a federal section 1983

5   claim based on a violation of the Prison Rape Elimination Act."); *Bell v. Cnty. of*

6   *Los Angeles*, No. CV 07-8187-GW (E), 2008 WL 4375768, at *6 (C.D. Cal. Aug.

7   25, 2008) ("Plaintiff has no claim under the Prison Rape Elimination Act; the Act

8   does not create a private right of action.").  Plaintiff's PREA allegation does not

9   give rise to federal question jurisdiction.

10      The Second Cause of Action is for "Physical Injury," but it does not allege

11   any basis for federal question jurisdiction.  Rather, Plaintiff appears to plead a state

12   law tort claim.

13      The Third Cause of Action is for "Criminal Conduct" asserts that the conduct

14   of numerous Defendants violated 18 U.S.C. §§ 2381 and 2383, which constituted

15   "Class A felonies" under 18 U.S.C. § 3559(a)(1), and also violated California law.

16   Plaintiff's allegation in this claim and elsewhere that California law was violated

17   does not serve as a basis for federal question jurisdiction.  His assertion that

18   Defendants violated provisions of the federal criminal code also are inadequate to

19   form any basis for federal question jurisdiction.  18 U.S.C. § 2381 renders "treason"

20   a federal criminal offense, and 18 U.S.C. § 2382 renders "rebellion and

21   insurrection" a federal criminal offense.  There are no facts alleged in the Complaint

22   that, no matter how liberally they are construed, can be said to invoke either crime.

23   Plaintiff's assertion that the Defendants committed these federal crimes and are

24   "enemy combatants" is plainly fantastical, delusional, and legally frivolous within

25   the  meaning of federal law.  *See Neitzke*, 490 U.S. at 325; *Franklin v. Murphy*, 745

26   F.2d 1221, 1227-28 (9th Cir. 1984).  A claim may be dismissed sua sponte as

27   frivolous when, as here, it is based on an indisputably meritless legal theory or

28   where the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.

1      Even more importantly for the jurisdictional question, neither of these federal

2  criminal statutes gives rise to a private right of action or civil claim.  *See, e.g., El v.*

3  *California,* 2020 WL 6728090, at *2 (E.D. Cal. Nov. 16, 2020) (finding that pro se

4  plaintiff had no authority to bring claims based on "statutes arising under the

5  criminal code, including such sections as 18 U.S.C. § 2381–Treason...," and that

6  complaint was frivolous), adopted by 2020 WL 7425250 (Dec. 18, 2020)

7  (dismissing case with prejudice); *Ponvanit v. Superior Court of California*, No. CV

8  17-4054-FMO (JEM), 2018 WL 1135380, at *9 (C.D. Cal. Jan. 31, 2018) (there is

9  no private right of action under 18 U.S.C. §§ 2381 and 2383), adopted by 2018 WL

10  1135502 (Feb. 27, 2018); *Vachon v. Reverse Mortgage Solutions, Inc.*, No. EDCV

11  16-02419-DMG (KES), 2017 WL 6628103, at *9 (C.D. Cal. Aug. 11, 2017)

12  (finding that there is no private right of action under 18 U.S.C. § 2383 and that

13  dismissal with prejudice, therefore, was appropriate), adopted by 2017 WL 6626649

14  (Dec. 28, 2017); *Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 WL

15  2354308, at *13 (E.D.N.Y. May 15, 2015) (dismissing claims for treason and

16  misprision of treason under 18 U.S.C. §§ 2381 and 2382, respectively, because these

17  statutes do not provide a private right of action); *Vinh Hung Lam v. Citigroup, Inc.*,

18  No. CV 08-4317-PA, 2018 WL 1134332, at *2 (C.D. Cal. Aug. 18, 2008) (finding

19  no private right of action exists for federal crimes of treason or conspiracy to

20  commit treason and dismissing the complaint with prejudice).  Accordingly, the

21  Third Cause of Action cannot serve as a basis for federal question jurisdiction.

22      In the Fourth Cause of Action, labelled "Aggravated Identity Theft," Plaintiff

23  alleges that various Defendants have violated California law, biblical law, and 18

24  U.S.C. 1028A(a)(2).  The allegations of state and biblical law violations do not give

25  rise to federal question jurisdiction.  Neither does the invocation of Section 1028A,

26  which adds a sentencing penalty when identity theft is committed in connection with

27  certain specified federal crimes.  As with the above-discussed federal criminal

28  statutes, Section 1028A does not give rise to a private right of action enforceable by

private citizens civilly.  *See, e.g., Chavez v. United States*, No. 1:21-cv-00872-JB-SCY, 2021 WL 4949191, at *16 (D. N.M. Oct. 25, 2021) (so holding and dismissing pro se complaint); *Kirby v. Montgomery*, No. 19-CV-0224-CVE-FHM, 2019 WL 1937566, at *2 (D. Ok. May 1, 2019) (same); *Farar v. McNesby*, No. 13-5683, 2014 WL 6861458, at *4 (E.D. Pa. Dec. 5, 2014) (Section 1028A is a criminal statute that does "not permit a private right of action"; and dismissing claim with prejudice); *Riga v. Benezette*, No. 6:12-CV-414-ORL-19DAB, 2012 WL 12910269, at *3 (M.D. Fla. July 12, 2021) (finding that, as plaintiff is a private citizen, he "does not have standing to bring a case under section 1028A because it is a criminal statute" and jurisdiction over the action is lacking); *Sump v. Schaulis*, No. 07-4014-RDR, 2007 WL 1054277, at *1 (D. Kan. April 9, 2007) (as private citizens, plaintiffs could not bring a civil action under Section 1028A).  The Fourth Cause of Action, therefore, does not provide any basis for federal jurisdiction.

In the Fifth Cause of Action, labeled "Terrorism," Plaintiff accuses all Defendants of having engaged in domestic and international terrorism in violation of 18 U.S.C. §§ 2331(1) and (5) and 2332b(a)(1)(A) by the acts alleged in the Complaint.  Even if the acts alleged in the Complaint occurred as Plaintiff claims, his assertion that these acts constitute domestic and/or international terrorism as those crimes are defined in the foregoing statutes is plainly fantastical and legally frivolous, and thus, this claim may be dismissed sua sponte on that basis alone.  *Neitzke*, 490 U.S. 319, 325, 327.  In particular, Plaintiff's conclusory assertion that "Defendants are guilty of international" terrorism is patently frivolous if not delusional, given that the Complaint alleges nothing more than a verbal altercation in a Beverly Hills pharmacy due to Plaintiff's refusal to wear a mask, a subsequent police stop in another pharmacy in Beverly Hills on October 16, 2021, some allegedly wrongful acts by the Beverly Hills police that followed, and the failure to settle by various domestic persons and entities when Plaintiff submitted claims based on the events of October 16, 2021.  There is nothing "international" at issue in

the Complaint, much less any "international terrorism," no matter how liberally it is construed.  Thus, the civil remedy available through 18 U.S.C. § 2333 cannot apply here.  *See Alvarez v. University of Oregon*, No. 6:19-cv-01071-AA, 2020 WL 61036, at *9 (D. Ore. Jan. 6, 2020) (dismissing claim brought under Section 2333 with prejudice, because: "Plaintiff does not allege that defendants' actions occurred outside Eugene, Oregon, let alone outside the United States. Nor does plaintiff allege facts to demonstrate that defendants' actions 'transcend national boundaries' in any way.").

Moreover, neither federal criminal statute cited by Plaintiff affords him a private right of action that may be enforced civilly outside of an action brought under Section 2333, a remedy that does not apply to Plaintiff.  *See, e.g.*, *Davis v. Federal Bureau of Investigation*, No. 17-cv-01997-BAS-AGS, 2018 WL 1185239, at *2 (S.D. Cal. March 7, 2018) (there is no private cause of action for domestic terrorism under Section 2331(5) and a federal claim brought on that basis was not supported by jurisdiction and dismissed); *Archer v. City of Taft*, No. 1:12-cv-00261-AWI-JLT, 2012 WL 1458136, at *6 (E.D. Cal. April 26, 2012) (claim for domestic terrorism brought under Section 2331 dismissed, because the statute does not provide for a private right of action); *Calhoun v. Mann*, No. 08-458, 2009 WL 839214, at *2 (E.D. Pa. March 26, 2009) (Sections 2331 and 2332b are criminal statutes that "do not provide a private cause of action").  Accordingly, nothing in the Fifth Cause of Actions provides federal jurisdiction over this case.

Finally, the Sixth Cause of Action is labeled "Human Trafficking."  Plaintiff contends that the events of the October 16 Incident constitute human trafficking violations within the meaning of 22 U.S.C. § 7101 and Executive Order 13903. Plaintiff's contention that the events alleged fall within the scope of the Trafficking Victims Protections Act (TVPA) as contained within Section 7101 *et seq.* as well as Executive Order 13903 is beyond frivolous.  There is nothing alleged in the Complaint that implicates this law, which is designed to prevent human trafficking

14

1   for the purposes of slavery, involuntary servitude, and forced participation in the sex

2   trade, as well as to protect its victims.  There also is nothing in Section 7101 *et seq.*

3   that indicates a private cause of action exists in connection with those provisions.

4   Nor does Executive Order 13901, 85 Fed, Reg. 6721 (Jan. 31, 2020).[3]

5          Another portion of the TVPA – commencing at 18 U.S.C. § 1581 *et seq.* –

6   does contain a civil remedies provision.  Section 1595 allows victims "of a violation

7   of this chapter" to bring a civil action against a perpetrator.  Nothing in the

8   Complaint, however, can be liberally construed to set forth any "violation of this

9   chapter" within the scope of Section 1595.  The crimes listed within the "chapter"

10   are:  holding or returning a person to a condition of peonage (Section 1581);

11   building, equipping, loading, etc. vessels for the purposes of procuring persons from

12   foreign countries to be transported, held, or sold as slaves (Section 1582);

13   kidnapping or enticing any other person for the purposes of having them be sold into

14   involuntary servitude or held as a slave (Section 1583); holding or selling someone

15   into involuntary servitude (Section 1584); seizing a person on a foreign shore or

16   detaining such person for the purpose of making that person a slave (Section 1585);

17   serving on a vessel involved in the transportation of slaves from a foreign country to

18   another (Section 1586); having a person onboard for the purposes of selling that

19   person as a slave (Section 1587); transporting persons from the United States to any

20   other place for the purposes of slavery (Section 1589); providing or obtaining forced

21   labor, or benefiting from the same (Section 1589); engaging in trafficking with

22   respect to peonage, slavery, involuntary servitude, or forced labor (Section 1590);

23   sex trafficking of children (Section 1591); unlawful document-related conduct in

24   furtherance of most of the foregoing crimes (Section 1592); and benefitting

25

26   _____

27   [3]      The Executive Order, at Section 6(c), expressly states that it is not intended to, and does
    not, create any right or benefit, substantive or procedural, enforceable by law by anyone against

28   the United States and its departments, agencies, entities, officers, employees or agents, "or any
    other person."  85 Fed. Reg. at 6723.

financially from violations for certain of the foregoing crimes (Section 1593A). The Complaint's allegations plainly do not allege conduct by any Defendant that falls within any of these criminal provisions, and thus, the Section 1595 civil remedy is inapplicable to Plaintiff. The Sixth Cause of Action does not provide any basis for federal question jurisdiction.

Finally, the Court notes that Plaintiff has named the CDC and its Director as Defendants. The inclusion of these two federal defendants, however, does not give rise to a tenable basis for finding that federal jurisdiction exists, given that the inclusion of the CDC and its Director as Defendants is patently frivolous within the meaning of *Neitzke, supra*. Plaintiff's sole theory against these two Defendants is that they caused him to be raped and assaulted by the police on October 16, 2021, by having earlier published unspecified "deceptive communications," including mask mandates from which Plaintiff claims to be exempt. There are zero facts alleged against either federal Defendant in the Complaint; rather, Plaintiff just routinely lumps them in when describing his generalized and factually unsupported assertions of "terrorism," "criminal conduct," and "human trafficking." Plaintiff's allegation that the CDC and its Director caused him to be subjected to such terrible events, as well as to be raped and battered, is wholly conclusory and factually and legally frivolous. It seems that Plaintiff has included these two Defendants solely for the purpose of attempting to manufacture otherwise non-existent federal subject matter jurisdiction. The Court does not believe that the Complaint's inclusion of this single bare and palpably frivolous allegation against the CDC and its Director serves as a viable basis for finding federal question jurisdiction to exist over this lawsuit.

The Court's concern here is with jurisdiction – does it exist or not? – and therefore it has not addressed at any length whether the six claims alleged in the Complaint fail to state claims upon which relief can be granted. It seems likely that they do not, but the Court has not analyzed this issue in any depth, because although a complaint's failure to state a claim may warrant its sua sponte dismissal, this

1  normally is deemed a dismissal on the merits rather than a dismissal based on lack

2  of jurisdiction.  The exception to this rule, however, is that "a suit may sometimes

3  be dismissed for want of jurisdiction where the alleged claim under the Constitution

4  or federal statutes clearly appears to be immaterial and made solely for the purpose

5  of obtaining jurisdiction or where such a claim is wholly insubstantial and

6  frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).  As the Supreme Court

7  explained in *Hagans v. Lavine*, 415 U.S. 528 (1974), "the federal courts are without

8  power to entertain claims otherwise within their jurisdiction" if they are "so

9  attenuated and unsubstantial as to be absolutely devoid of merit," "wholly

10  insubstantial," "obviously frivolous," "plainly unsubstantial," or "no longer open to

11  discussion."  *Id.* at 536-37 (citations omitted).

12          It is apparent that the Complaint's lurid and overblown allegations of

13  terrorism, human trafficking, and other federal crimes and that Defendants are

14  "enemy combatants" have been included in an ill-disguised attempt to manufacture

15  federal question jurisdiction that is lacking.  These allegations, while dramatic, are

16  conclusory at best and bereft of any factual support.  They appear to violate Rule

17  11(b) of the Federal Rules of Civil Procedure given their plainly frivolous and

18  factually baseless nature.  Federal question jurisdiction exists only if "there is a

19  *substantial* question of federal law."  *Lafreniere v. Board of Trustees of California*

20  *State University*, No. C 06-04475-JSW, 2007 WL 9757966, at *2 (N.D. Cal. March

21  7, 2007) (citing *Hagans, supra*).  The Complaint fails to set forth any substantial

22  question of federal law and is devoid of a facially tenable basis for finding that

23  federal jurisdiction exists over this case.  Thus, dismissal for lack of jurisdiction is

24  warranted.  *See VanLoan v. Nation of Islam*, 2022 WL 885147, at *1 (9th Cir.

25  March 5, 2022) (affirming dismissal of pro se complaint because the "claims are too

26  frivolous and insubstantial to invoke subject matter jurisdiction"); *Franklin*, 745

27  F.2d at 1227 n.6 ("A paid complaint that is 'obviously frivolous' does not confer

28  federal subject matter jurisdiction" and may be dismissed) (citing *Hagans*).

17

1

**ORDER TO SHOW CAUSE**

2

    For the foregoing reasons, the Court finds that federal jurisdiction over the

3

Complaint does not exist.  Plaintiff is ORDERED TO SHOW CAUSE why this case

4

should not be dismissed for lack of jurisdiction.  By no later than May 31, 2022,

5

Plaintiff shall file a response to this Order explaining what basis for federal

6

jurisdiction, if any, exists.

7

    Plaintiff is cautioned that the failure to respond to this Order in a timely

8

manner will be deemed to be a concession that jurisdiction is lacking and that the

9

case therefore may be dismissed.

10

11

    **IT IS SO ORDERED.**

12

13

DATED: May 13, 2022

14

_____

15

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

18